The following constitutes
the order of the court. Signed June 01, 2007

_____
Roger L. Efremsky
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 02-55795-RLE |
| 3DFX INTERACTIVE, INC., | |
| Debtor. | Chapter 11 |
| _____/ | |

MEMORANDUM DECISION AND ORDER DISQUALIFYING SPECIAL COUNSEL TO UNSECURED CREDITORS' COMMITTEE

I. Introduction

Before the Court for decision are two motions to disqualify Adorno & Yoss LLP ("Adorno") as special counsel to the Official Committee of Unsecured Creditors (the "Creditors' Committee"). The motions are based on Bankruptcy Code §1103(b) and Rule 3-310 of the California State Bar Rules of Professional Conduct.

Moving parties are the Official Committee of Equity Security Holders (the "Equity Committee") and the United States Trustee (collectively, the "Moving Parties"). Moving Parties argue that

disqualification is mandatory because while Adorno represented the Creditors' Committee at a mediation which sought a global settlement in this case it simultaneously defended the chair of the Creditors' Committee, Avnet Electronics, Inc. ("Avnet"), in a fraudulent conveyance action brought by William Brandt, the chapter 11 trustee (the "Avnet Action" and the "Trustee").[1]

Adorno's opposition to both of the motions (the "Opposition") is supported by Declarations of Charles M. Tatelbaum and Lillian G. Stenfeldt. The Opposition contends that there is no actual or potential conflict here because Adorno was retained only for the purposes of the mediation. Adorno also argues that there was an agreement with the Trustee to put the Avnet Action on hold until the mediation was concluded and that there was full disclosure to all parties of Adorno's relationship with Avnet and its appearance in the Avnet Action. Adorno also argues that Moving Parties lack standing to seek its disqualification. Finally, Adorno claims that disqualification will pose a hardship on the Creditors' Committee and is only sought for tactical reasons.

## II. Factual Background

The facts are largely undisputed. Facts referred to herein are taken from the Declarations of Charles M. Tatelbaum ("Tatelbaum Declarations") filed in support of the Opposition, the correspondence included with the Equity Committee's Reply Brief and the docket in this case and the Avnet Action of which the Court takes judicial notice.

//

---

[1] Adversary Proceeding 04-5487. The Trustee is seeking recovery of approximately $900,000 from Avnet.

2

A. <u>Adorno's Employment</u>

Sedgwick, Detert, Moran & Arnold ("Sedgwick") is the Creditors' Committee's main counsel in this case. In January 2005, Sedgwick asked Adorno to serve as special conflicts counsel after Sedgwick disclosed a potential conflict on the eve of a court ordered mediation session involving the principal parties in this case, including nVidia Corporation and nVidia US Investment Company ("nVidia"), certain landlords, the Creditors' Committee and the Trustee.[2]

On January 14, 2005, Sedgwick filed an Application for Order Approving Employment of Adorno & Yoss as Special Counsel for the Official Committee of Unsecured Creditors (the "Employment Application"). On February 1, 2005, the Court entered its Order authorizing the employment of Adorno as special counsel to the Creditors' Committee. In the Declaration of Charles M. Tatelbaum filed in support of the Employment Application, Adorno disclosed that for many years it had represented Avnet. The Declaration also stated that if he became aware of additional parties or professionals involved in the case he would file supplemental declarations as needed to disclose any other relevant connections.

Adorno attended a mediation session on February 10, 2005 and remained involved throughout the mediation process which culminated in a vote by the Creditors' Committee on November 1, 2005 to

---

[2] The potential conflict arose due to Sedgwick's representation of certain insurance carriers. The Declaration of Robert S. Gebhard filed in support of the Application for Order Approving Retention of Adorno stated Sedgwick's "concurrent representation of the Committee and the D&O Carriers at the mediation could present a conflict...the Royal Policy may become a potential source for funding any global settlement of the nVidia Action..."

3

approve a settlement. While Adorno does not acknowledge this in the Opposition, the docket indicates that until at least July 2006, Adorno continued to do work for the Creditors' Committee that was not limited to the mediation. (See Adorno's July 17, 2006 Objection of the Official Committee of Unsecured Creditors to Motion to Deem Claim of Creditor Zoran Corporation Timely Filed.)

B. The Avnet Action

In October 2004, the Trustee filed approximately 45 fraudulent conveyance actions, one of which was the Avnet Action. (These cases are referred to as the "STB Actions" by the Trustee.) The initial complaint named Kent Electronics Corporation ("Kent"), predecessor to Avnet. The Trustee took Kent's default in February 2005 and obtained a default judgment thereafter. According to the Tatelbaum Declaration, he learned of the default judgment for the first time on March 31, 2005.

On May 3, 2005, counsel for the Trustee filed a stipulation signed by Charles Tatelbaum on behalf of Adorno to set aside the default judgment. The stipulation recites that on or about April 1, 2005, counsel for Avnet contacted the Trustee's counsel regarding setting aside the default and amending the complaint to name Avnet.

On May 11, 2005, the Trustee filed an amended complaint naming Avnet (the "Amended Complaint") and thereafter, with its permission, served Adorno with the Amended Complaint and the October 19, 2004 scheduling order applicable to the STB Actions (the "Scheduling Order").

Avnet's response to the Amended Complaint was due June 13, 2005. According to the Tatelbaum Declaration, Adorno corresponded with the Trustee's counsel regarding Avnet's response, expressing

4

counsel's belief that the Avnet Action was to be held in abeyance until after the mediation had been completed. While Adorno quotes selectively from its correspondence with the Trustee's counsel, it does not provide the correspondence itself. Correspondence between Adorno and the Trustee provided by the Equity Committee in its Reply Brief, provides a fuller picture of what transpired. It indicates that Adorno promised to respond by the end of the week of June 20, 2005 --which it did not do. It also indicates that when no response had been filed by September 16, 2005 and Adorno had failed to serve its Rule 26 initial disclosures as it had agreed by August 31, the Trustee threatened to take Avnet's default.

After months of postponing the inevitable, on September 21, 2005, Adorno filed an answer on behalf of Avnet. The answer denied all the allegations and asserted 23 affirmative defenses.

C. <u>Adorno's Fee Application and Substitution in the Avnet Action</u>

On October 19, 2005, Adorno filed its First and Final Application for Compensation and Reimbursement of Expenses as Special Counsel for the Committee (the "Fee Application"). The Fee Application states that Adorno had rendered services from February 1, 2005 through September 30, 2005. The Fee Application was later amended to state that it was not *final* as work in connection with a proposed settlement arrived at through the mediation appeared to require additional work by Adorno. [3]

On December 5, 2005, Adorno filed its Notice of Conclusion of

---

[3] See Adorno's October 19, 2005 First and Final Application for Compensation and Reimbursement of Expenses as Special Counsel for the Official Committee of Unsecured Creditors. Adorno's fees of $41,580 and expenses of $2,305.13 were approved by Order dated December 20, 2005.

5

Employment and Work of Charles M. Tatelbaum as Special Counsel to the Creditors [sic] Committee. This was withdrawn on March 10, 2006.

On December 20, 2005, Adorno was replaced by Sheppard Mullin Richter & Hampton LLP in the Avnet Action.

### III. Legal Analysis

A. <u>Standard to be Applied</u>

The Court has the inherent authority to supervise attorneys appearing before it and it is within the Court's discretion to disqualify an attorney if it appears appropriate to do so on the facts before it. <u>The People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc.</u>, 20 Cal. 4th 1135, 1145 (1999) (stating trial court's authority to disqualify an attorney derives from the power inherent in every court to control judicial proceedings); <u>In re Muma Services, Inc.</u>, 286 B.R. 583 (Bankr. D. Del. 2002) (explaining power to disqualify attorney is matter within court's discretion).

B. <u>Bankruptcy Code §1103</u>

Bankruptcy Code §1103(b) provides in pertinent part that

> an attorney...employed to represent a committee appointed under section 1102...may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

The policy behind §1103(b) is plain. It prohibits concurrent representation if it would "interfere with counsel's vigorous advocacy for either client, jeopardize counsel's undivided loyalty to either client, or endanger the confidences and secrets of either client...It also prohibits dual representation where there exists

6

even the appearance of impropriety." In re National Liquidators, Inc., 182 B.R. 186, 192 (S.D. Oh. 1995)(citations omitted).

The term adverse interest is not defined in the Bankruptcy Code. A generally accepted definition of adverse interest is: (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against the estate. See In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987); In re AFI Holdings, Inc., 355 B.R. 139 (9th Cir. BAP 2006) (recognizing this definition).

In In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 655 (Bankr. E.D. Pa. 1987), the bankruptcy court refused to approve employment using this adverse interest standard. In that case, a law firm had first taken the position that certain clients of the firm were entitled to full payment from a debtor whose cash flow was insufficient to pay all creditors in full. The court found that the firm's earlier position showed it possessed an adverse interest disqualifying it from representing the committee.

Consistent with this approach, the court in In re Oliver's Stores, Inc., 79 B.R. 588 (Bankr. D. N.J. 1987) prohibited a firm from representing individual members of a committee in an action against the debtor's former accountant when the firm had first represented the committee.

The court explained the considerations behind the prohibition

7

against simultaneous representation as follows:

> First, courts have expressed concern that the vigor of the lawyer's representation of one client may be diminished in an effort to avoid antagonizing the other client. The second consideration relates to the client's expectation of receiving the undivided loyalty of the lawyer. While sometimes it is difficult to prove that an actual or potential conflict exists between the committee and the individual creditor, a conflict of interest can be established by a showing that a conflict is likely to arise. In such cases, the integrity of the committee process must be protected. <u>Id</u>. at 594.

Using this construct, Moving Parties contend that Adorno presents a textbook example of the violation of the adverse interest prohibition of §1103(b). A conflict actually arose when Adorno undertook Avnet's defense.

The Opposition cites no authority contrary to that cited by the Moving Parties. It cites no case in which committee counsel was allowed to simultaneously represent a committee and fight an estate's avoidance action on behalf of a creditor client. Nor does the Opposition cite any authority for the proposition that counsel's good faith belief that there is no conflict is the standard by which this question is judged.

When Adorno was employed in January 2005, the Trustee had not yet named Avnet in one of the STB Actions. However, as of at least March 31, 2005, Adorno knew the Trustee had sued Avnet's predecessor and obtained a default judgment and knew that the Trustee intended to pursue Avnet. At this point, Adorno undertook Avnet's defense. From January through December 2005, Adorno actively participated in the mediation on behalf of the Creditors' Committee. Thus, for a significant period of time, Adorno both defended Avnet and represented the Creditors' Committee itself in

8

the context of the mediation in which a global settlement of the chapter 11 case was sought.[4] (In addition, in July 2006, Adorno represented the Creditors' Committee in filing an opposition to the motion of Zoran Corporation to deem its claim timely filed --a fact which belies Adorno's contention that it was retained only for the purpose of attending the mediation and then departed from the case.)

It does not appear from the parties' correspondence that there was an agreement to put the Avnet Action on hold. In fact, there could have been no such agreement because the Scheduling Order (which Adorno had received) established deadlines for all the STB Actions. They were moving slowly but they were not at a standstill. Even if there had been such an agreement, it would not have removed the conflict, an argument implicit in Adorno's Opposition.

In violation of §1103(b), Adorno represented another entity with an adverse interest in connection with this case in early 2005. The Trustee sought to recover approximately $900,000 from Avnet for the benefit of all unsecured creditors in this case. The Creditors' Committee's constituents would benefit from this recovery and, on behalf of Avnet, Adorno was resisting it. This is not the "mere insinuation" of a conflict as Adorno argues; it is real.

Adorno's continued representation of the Creditors' Committee on these facts is improper and the Court will exercise its discretion to disqualify Adorno.

---

[4] Admittedly, Adorno did not formally respond to the complaint until September 2005, and did so only upon the Trustee's threat to take its client's default a second time.

9

C. California Law

The same policy that underlies §1103(b) informs the California rules on concurrent representation of clients with adverse interests. The fundamental expectation of undivided loyalty creates a prohibition of concurrent representation of clients with conflicting interests.

Rule 3-310 of the California State Bar Rules of Professional Conduct provides in pertinent part:

```
(C) A member shall not, without the informed written consent
of each client:
    (1) accept representation of more than one client in a matter
in which the interests of the clients potentially conflict; or
    (2) accept or continue representation of more than one client
in a matter in which the interests of the clients actually
conflict;
    (3) represent a client in a matter and at the same time in a
separate matter accept as a client, a person or entity whose
interest in the first matter is adverse to the client in the first
matter...
    (E) A member shall not, without the informed written consent
of the client or former client, accept employment adverse to the
client or  former client where, by reason of the representation of
the client or former client, the member has obtained confidential
information material to the employment.
```

Under California law, concurrent representation of clients with adverse interests generally requires automatic disqualification. Cal West Nurseries, Inc. v. Superior Court, 129 Cal. App. 4th 1170, 1175 (2005) (stating that absent informed written consent, lawyer may not concurrently represent clients who have actual or potential conflicts); Flatt v. Superior Court of Sonoma County, 9 Cal. 4th 275, 284 (1994) (in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or automatic one even though matters may have nothing in common and there is no risk of disclosure of confidential information).

10

Case: 02-55795    Doc# 1044    Filed: 06/01/07    Entered: 06/01/07 16:16:01    Page 10 of 15

There is no suggestion that Adorno obtained the informed written consent of the Creditors' Committee in advance of Adorno's representation of Avnet. However, Adorno claims the Creditors' Committee and other interested parties were "aware" of its representation of Avnet. (See Tatelbaum Declaration, paragraph 26.) Under the definitions in Rule 3-310, this awareness, if it existed, is insufficient. Disclosure is defined as telling the client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client. Informed written consent means the client's written agreement to the representation following written disclosure. Rule 3-310(A)(1) and (2).

On these facts, Rule 3-310 requires disqualification of Adorno.

D. <u>Standing</u>

Adorno argues that the general rule is that only former or current clients have standing to seek disqualification based on a conflict of interest. According to Adorno, in order to come within an exception that will allow standing, the Moving Parties must show that there is an invasion of a legally protected interest which is concrete and particularized and actual or imminent. <u>Colyer v. Smith</u>, 50 F.Supp.2d 966 (C.D. Cal. 1999).

Adorno's argument is not persuasive for several reasons. First, Bankruptcy Code §1109 provides that any party in interest may raise and be heard on any issue in a bankruptcy case.[5] The Moving Parties clearly have standing to raise the conflict issue under Bankruptcy

---

[5]/ The Court may also raise the issue *sua sponte* and take any action necessary or appropriate to prevent an abuse of process. <u>In re Interwest Business Equipment, Inc.</u>, 23 F.3d 311, 317 (10th Cir. 1994).

11

Code §1109 and Adorno essentially concedes as much.

Second, Moving Parties arguably have standing under applicable California law because it is well recognized that more than the interests of the parties themselves are involved in this context. See Speedee Oil Change, 20 Cal. 4th at 1145 (acknowledging that paramount concern is preservation of public trust in administration of justice and integrity of the bar; choice of counsel yields to ethical considerations that affect judicial process).

Third, as the Colyer court recognized, there is an established exception to the general rule limiting standing to clients or former clients. In a case where the ethical breach so infects the litigation that it impacts the moving party's interest in a just and lawful determination of claims, the moving party may have constitutional standing to bring a motion to disqualify based on a third party conflict of interest or other ethical violation. Colyer, 50 F. Supp. 2d at 971-972. See also In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976). The facts here bring Moving Parties within this exception.

E. Remaining Arguments Against Disqualification

Adorno makes three additional arguments. It asserts that disqualification will be a hardship on the Committee, that it is being sought to obtain a tactical advantage, and that it made full disclosures of its relationship with Avnet. None of these arguments is convincing.

First, there is no real support for the proposition that disqualification will pose a hardship for the Creditors' Committee on the basis that Adorno offers irreplaceable special skill in bankruptcy law.

12

Second, there is also no real basis for the assertion that disqualification is sought for tactical reasons. Neither of the Moving Parties has anything to gain by disqualification in the current context of this case. The settlement reached in the mediation appears to have been withdrawn and the plan of reorganization based on that proposed settlement appears at this point unlikely to proceed. (See June 28, 2006 Memorandum Decision re Chapter 11 plan confirmation issues, Docket Entry 898; April 19, 2007 Status Reports filed by the Trustee, the Equity Committee, the Creditors' Committee and nVidia, Docket Entries 1132-1135.)

Third, Adorno asserts it made full disclosure to the Trustee and the Creditors' Committee. Certainly, it did tell the Trustee it represented Avnet but there is no support for its assertion that it obtained the informed written consent of the Creditors' Committee. Moreover, when it began defending Avnet, Adorno did not file a supplemental declaration updating the disclosures made in connection with its employment as special counsel. Even if it had, it is highly unlikely that the Court would have approved its dual role.

### IV. Conclusion

Once Adorno acted on behalf of Avnet in the Avnet Action, it had a disqualifying adverse interest under Bankruptcy Code §1103(b) and the applicable California Rules of Professional Conduct. Its defense of Avnet, if successful, would be detrimental to the interests of the Creditors' Committee. As Moving Parties point out, this dual role raises serious concerns about the vigor and loyalty with which the firm could pursue the interests of the Creditors' Committee. It casts doubt on the very settlement arrived at in the mediation. Adorno is therefore disqualified as special counsel for

13

the Creditors' Committee. The Court does not now rule on the United States Trustee's request that fees paid to Adorno be disgorged. Such a request will be considered if and when made by the United States Trustee (or other interested parties) by separate motion.

* * * * * END OF ORDER * * * * *

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1

2  **Court Service List** (service by ecf)

3  Nanette Dumas, Esq.
   Office of the U. S. Trustee
4  280 So. First Street, Rm. 268
   San Jose, CA 95113-3099

5

   Robert P. Varian, Esq.
6  Karen Johnson-McKewan, Esq.
   ORRICK HERRINGTON & SUTCLIFFE LLP
7  The Orrick Building
   405 Howard St.
8  San Francisco, CA 94105-2669

9  Aron Oliner, Esq.
   DUANE MORRIS
10 One Market Plaza, Spear Tower, Suite 200
   SF, CA 94105

11

   Peter G. Bertrand, Esq.
12 Robert E. Izmirian, Esq.
   BUCHALTER NEMER
13 333 Market Street, 25th Floor
   San Francisco, CA 94105-2130

14

   Eric D. Goldberg, Esq.
15 STUTTMAN, TREISTER
   1901 Avenue of the Stars
16 Los Angeles, CA 90067

17 Steven Roland, Esq.
   SEDGWICK, DETERT
18 One Market Plaza
   SF, CA 94105

19

   Michael Ahrens, Esq.
20 SHEPPARD MULLIN RICHTER & HAMPTON LLP
   4 Embarcadero Center
21 SF, CA 94105.

22

23

24

25

26

27

28

15